IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ENERVA W. TROTMAN,                )
                                  )
        Plaintiff,                )
                                  )
    v.                            )   Civil Action No. 1:20-68
                                  )
TIMOTHY SMITH,                    )
                                  )
        Defendant.                )
                                  )

**MEMORANDUM OPINION**

In this pro se civil rights lawsuit, Plaintiff Enerva W. Trotman ("Trotman"), an inmate at the Federal Correctional Institution-McKean in Lewis Run, Pennsylvania, alleges that a Bureau of Prisons ("BOP") correctional officer, Defendant Timothy Smith ("Smith"), denied him an approved transfer to another housing unit and filed a false misconduct charge against him in retaliation for two prior lawsuits that Trotman had filed against Smith.

Smith has moved the Court to dismiss Trotman's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a cognizable claim for relief.[1] (ECF No. 26.) For the reasons that follow, Smith's motion will be granted.[2]

---

[1] Alternatively, Smith contends that he is entitled to summary judgment under Federal Rule of Civil Procedure 56 based on the doctrine of qualified immunity. Although, in an order dated November 23, 2020, the Court advised the parties that it may convert the pending motion to one for summary judgment (ECF No. 28), after further review the Court finds it unnecessary to do so because it need not reach Smith's qualified immunity argument.

[2] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to conduct all proceedings in this case, including the entry of final judgment, as authorized by 28 U.S.C. § 636. (ECF Nos. 23, 24.)

I.  **Factual Background**[3]

In 2017, Trotman filed two lawsuits that involved Smith. First, in a habeas petition, Trotman asserted that his due process rights were violated when the BOP disallowed ten days of good conduct time after Smith initiated a disciplinary action against him. *Trotman v. Warden, FCI McKean*, No. 1:17-cv-235, (W.D. Pa. Oct. 25, 2018). This Court denied habeas relief based on its determination that the BOP's decision rested upon evidence sufficient to survive review by a federal habeas court. *See id*. Second, in a separate civil rights lawsuit, Trotman alleged that Smith engaged in racial discrimination, libel, slander, defamation of character, and religious discrimination. *Trotman v. Smith*, No. 1:17-cv-285, 2019 WL 1359483, at *1 (W.D. Pa. March 26, 2019). This Court granted summary judgment in favor of Smith in that case because Trotman had failed to comply with the four-step administrative remedy process required by the Federal Tort Claims Act, 28 U.S.C. § 2675(a), and the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a). *Id.* at *3.

---

[3] To contextualize Trotman's allegations, the Court takes judicial notice of the disposition of Trotman's prior lawsuits against Smith. *See Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) ("[A] court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint" in deciding a motion to dismiss.); *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) ("[A] court may take judicial notice of a prior judicial opinion."). The Court also finds it appropriate to consider the exhibits appended to the Complaint in resolving the pending motion. *See Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) ("In deciding a Rule 12(b)(6) motion, a court . . . consider[s] only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("[T]he primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated where the plaintiff has actual notice . . . and has relied upon these documents in framing the complaint."). And although Trotman has filed an Amended Complaint (ECF No. 11), given his pro se status, the Court construes this subsequent filing—which merely elaborates on the injuries that he suffered—as a supplement to the Complaint. Accordingly, the original Complaint remains the operative pleading in this lawsuit.

Trotman alleges that on March 28, 2019, he was called to the Lieutenant's Office and asked whether he was getting along with Smith. (ECF No. 11 ("Supp. Compl.") ¶ 3; *see* ECF No. 5-1 at 6.) Apparently, this meeting occurred two days after the Court granted summary judgment in favor of Smith in the second lawsuit Trotman had filed against him in 2017. A couple of weeks later, on April 12, 2019, Trotman asked Smith for a cart to transport his property from one housing unit to another. (Supp. Compl. ¶ 1; ECF No. 5-1 at 6, 9.) When Smith denied his request, Trotman asked to be taken to Lieutenant's Office so that he could seek permission to use the cart. (Supp. Compl. ¶ 1; ECF No. 5-1 at 6, 9.) Smith told Trotman that he could go to the Lieutenant's Office when the next controlled move started. (Supp. Compl. ¶ 1.)

According to Trotman, Smith then allowed other inmates to move but detained Trotman. (*Id.*) While the move was still in progress, Smith radioed Lieutenant Thompson and then ordered Trotman to go to the Lieutenant's Office by stating "hey nigger go to the . . . office." (*Id.*; ECF No. 5 ("Compl.") at 2.) Trotman alleges that, once in the Lieutenant's Office, he was falsely accused of threatening his unit counselor, a Mr. Haines, prompting an "in-house investigation." (Supp. Compl. ¶ 2; *see* ECF No. 5-1 at 9.) Two hours later, Trotman was placed in disciplinary segregation for two weeks. (Compl. at 2; Supp. Compl. ¶ 2.)

Apparently, Smith had reported that he overheard Trotman say that "[t]his is retaliation, I will let the courts get him. I am going to get Mr. Haines one way or another," and that when Smith asked Trotman about this statement, Trotman replied, "[t]his is not about you, I'm going to get Haines!" (ECF No. 5-1 at 1.) Trotman maintains that he never made any threatening statements to anyone and alleges that Mr. Haines—who is a "foe" of Trotman—colluded with Smith to frame him. (Compl. at 2; ECF No. 5-1 at 6.)

3

A Disciplinary Hearing Officer ("DHO") conducted a hearing on the misconduct charge on June 4, 2019. (ECF No. 5-1 at 1.) Trotman called three witnesses. (*Id.* at 3.) One of those witnesses stated that he did not observe any interaction between Trotman and Smith. (*Id.* at 4.) The second witness testified that Trotman did not even speak to Smith. (*Id.*) And the third witness claimed that he did not hear anything. (*Id.*) A few days after the hearing, on June 13, 2019, Trotman sent a message to the warden's office advising that one of his witnesses had informed him that Smith was intimidating witnesses. (*Id.* at 11.) The warden acknowledged receipt of Trotman's message on June 17, 2019. (*Id.* at 10.)

The DHO issued his decision on June 24, 2019. (*Id.* at 2–5.) He determined that Trotman had made the threatening statements and disallowed twenty-seven days of Trotman's good conduct time as a sanction. (*Id.* at 4–5; Supp. Compl. ¶ 2.) Trotman pursued an administrative appeal of the DHO's decision on the basis that there was insufficient evidence to support it. (ECF No. 5-1 at 6–9.) On October 4, 2019, Trotman's appeal was granted because "[a] thorough review of the record reveal[ed] questions concerning the disciplinary process." (*Id.* at 8.) Based on this review, the disciplinary action and the sanctions imposed were expunged from Trotman's record. (*Id.*)

Trotman then filed this lawsuit in which he alleges that Smith had engaged in a "retaliatory tactic" by falsely accusing him of threatening staff. (Supp. Compl. ¶ 3.) Trotman asserts that Smith's action constitutes a pattern because this was the second time that Smith had filed a false incident report against Trotman that resulted in his being placed in disciplinary segregation—the first being in 2015. (*Id.*; see ECF No. 5-1 at 6.) According to Trotman, the BOP's imposed punishments of disciplinary segregation and forfeiture of good conduct time were disproportionate to the alleged offense and not supported by evidence. (Supp. Compl. ¶ 2.) Trotman alleges that his injures include time spent in segregation, loss of commissary privileges, restricted showers,

4

restricted phone calls, inability to buy hygiene products, mental anguish, and a "shot on record [which] stops transfer/raises custody." (*Id.* at 2.)

Based on the foregoing, Trotman contends that Smith violated his First Amendment, Fifth Amendment, Eighth Amendment, and Fourteenth Amendment constitutional rights, as well as 28 C.F.R. § 7.12, (Compl. at 2, 4), and his right, under 28 C.F.R. § 541.12 "to expect that as a human being [he] will be treated respectfully, impartially and fairly by all personnel."[4] (Supp. Compl. ¶ 3.) Trotman seeks injunctive relief, in form of a Court order compelling Smith to attend anger management, as well as one million dollars in damages. (Compl. at 3; Supp. Compl. at 2.)

## II.  Procedural History

Trotman initiated this lawsuit by filing a motion to proceed *in forma pauperis* which the Court granted on April 23, 2020; the Complaint was docketed on April 27, 2021. (ECF Nos. 4, 5.) Smith filed the currently pending motion with an accompanying brief to which Trotman has responded. (ECF Nos. 26, 27, 31). Accordingly, the matter is ripe for consideration.[5]

---

[4] There is no Section 7.12 in the current version of Title 28 of the Code of Federal Regulations. And although Section 541.12 was in the 1989 version of Title 28 of the Code of Federal Regulations, that section has been repealed. *See Moses v. Ortiz*, No. 18-12380(NLH), 2021 WL 268185, at *4 (D.N.J. Jan. 27, 2021) (noting that 28 C.F.R. 541.12 (1989) has been repealed). Accordingly, this opinion focuses on whether Trotman has plausibly alleged any violations of his constitutional rights.

[5] Smith's motion seeks dismissal of the Amended Complaint which the Court has construed as a supplement to the Complaint. (*See supra* n.3.) While Smith's motion is not directed at the operative pleading in this lawsuit, the Court notes that, because Trotman is a prisoner who has been granted *in forma pauperis* status, the screening provisions of the Prison Litigation Reform Act ("PLRA") are applicable to this case. And the Court's "obligation to dismiss a complaint under the PLRA is not excused even after the defendants have filed a motion to dismiss if it appears that the complaint fails to state a claim based upon grounds not raised by the defendants in their motion to dismiss." *Dare v. United States*, 2007 WL 1811198, at *4 (W.D. Pa. June 21, 2007) (citing *Lopez v. Smith*, 203 F.3d 1122, 1126 n.6 (9th Cir. 2000)). In screening complaints under the PLRA, courts utilize the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *D'Agostino v. CECOM RDEC*, 436 Fed. Appx. 70, 72 (3d Cir. 2011) (citing *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999)).

## III. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). While "accept[ing] all of the complaint's well-pleaded facts as true," the court "may disregard any legal conclusions." *Id.* at 210–11.

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). In sum, the plaintiff "must plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014).

To assess the sufficiency of a complaint, a court must take three steps: (1) outline the elements the plaintiff must plead to state a claim for relief; (2) peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth; (3) look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). The court's plausibility

determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

"[P]*ro se* litigants are held to a lesser pleading standard than other parties." *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008). "A document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation and quotation marks omitted); *see also Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a pro se litigant's pleadings is well-established."). Notwithstanding this liberality, pro se litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir.1996)).

## IV. Discussion

Trotman claims that Smith violated his First Amendment, Fifth Amendment, and Eighth Amendment constitutional rights.[6] The Court construes these claims as being brought against Smith in his individual capacity because an official capacity lawsuit against a federal employee, such as Smith, is "in all respects other than name, to be treated as a suit against the" United States, *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985), and "[i]t is a fundamental principle of sovereign immunity that federal courts do not have jurisdiction over suits against the United States unless Congress, via a statute, expressly and unequivocally waives the United States' immunity to

---

[6] Trotman also alleges his Fourteenth Amendment right pertaining to equal protection of the laws was violated. (Compl. at 4.) But because he is a federal prisoner, the applicable basis for his claim is the equal protection principles read into the Fifth Amendment. *See Davis v. Passman*, 442 U.S. 228, 234 (1979) (The Fifth Amendment due process clause "forbids the Federal Government to deny equal protection of the laws."); *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001) (Noting that Supreme Court "has construed the Fifth Amendment to contain an equal protection guarantee.").

7

suit." *United States v. Bein*, 214 F.3d 408, 412 (3d Cir. 2000) (citing *United States v. Mitchell*, 463 U.S. 206, 212 (1983)).

To the extent that he seeks money damages, Trotman anchors his claims in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, which provides a direct cause of action under the United States Constitution against federal officials for violation of federal constitutional rights. 403 U.S. 388, 397 (1971). In seeking dismissal, Smith contends that *Bivens* does not provide a damages remedy in this context, and even if a such a remedy exists, Trotman has failed to allege a violation of his constitutional rights.

Because Trotman seeks injunctive relief as well as money damages, the Court finds it appropriate to address Smith's contentions in reverse order. *See Hernandez v. Mesa*, 137 S. Ct. 2003, 2007 (2017) ("This approach—disposing of a *Bivens* claim by resolving the constitutional question, while assuming the existence of a *Bivens* remedy—is appropriate in many cases.")

### A. *First Amendment*

It is well established that "[r]etaliating against a prisoner for the exercise of his constitutional rights is unconstitutional," *Bistrian*, 696 F.3d at 376, and "as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). A prisoner alleging First Amendment retaliation "must show (1) constitutionally protected conduct, (2) an adverse action taken by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Mack v. Warden Loretto FCI*, 839 F.3d 286, 297 (3d Cir. 2016) (quoting *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)).

Trotman alleges that Smith falsely accused him of threatening staff because Trotman had filed a prior lawsuit against Smith and that, as result of this false report, Trotman was confined in disciplinary segregation and lost good conduct time. As explained below, while Trotman's allegations satisfy the first and second elements of his retaliation claim, they do not support the third essential element of the claim.

As to the first element, the Third Circuit has explained that the First Amendment's "Free Speech Clause and the Petition Clause protect . . . both expression generally and expression directed towards the government for the specific purpose of asking it to right a wrong." *Mack*, 839 F.3d at 297 (citing *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 388 (2011)). To be sure, prisoners, "like other individuals, have the right to petition the Government for redress of grievances which, of course, includes 'access . . . to the courts for the purpose of presenting their complaints.'" *Cruz v. Beto*, 405 U.S. 319, 321 (1972), quoting *Johnson v. Avery*, 393 U.S. 483, 485 (1969)). Therefore, by filing a lawsuit against Smith, Trotman engaged in constitutionally protected conduct. Trotman's allegations are also sufficient to support the "adverse action" element of his claim based on Smith's alleged filing of a false misconduct charge against him and his related placement in disciplinary segregation and loss of good conduct time. Smith's alleged action and its consequences would certainly deter a person of ordinary firmness from exercising his constitutional rights. Accordingly, the second element of a retaliation claim is also satisfied.

But Trotman's allegations do not support the third essential element of his retaliation claim against Smith—i.e., causation. The Third Circuit has explained that "[t]o establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v.*

*DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). Trotman cannot satisfy the causal link through temporal proximity because he filed the lawsuits involving Smith in 2017 but Smith's allegedly retaliatory action did not occur until 2019. And "for temporal proximity alone to show retaliatory motive, the time between the protected conduct and the adverse action cannot be more than a matter of days." *Jackson v. O'Brien*, No. 1:18-CV-00032-RAL, 2021 WL 982739, at *10 (W.D. Pa. Mar. 16, 2021) (citing *Booze v. Wetzel*, 2015 WL 5173937, *13–16 (M.D. Pa. Sept. 2, 2015)).

Because "there is no bright line rule for the time that may pass between protected speech and what constitutes actionable retaliation," *Conard v. Pa. State Police*, 902 F.3d 178, 183 (3d Cir. 2018), the Third Circuit has "allowed time-attenuated retaliation claims to proceed to discovery where there is a 'pattern of antagonism' that sheds light on the 'timing of events' enough to justify an inference of causation. *Curley v. Monmouth Cty. Bd. of Chosen Freeholders*, 816 Fed. Appx. 670, 674–75 (3d Cir. 2020) (quoting *Conard*, 902 F.3d at 184.) But Trotman has failed to allege an intervening pattern of antagonism which could give rise to such an inference. While Trotman asserts that Smith had previously filed a false misconduct charge against him in 2015 and contends that it constitutes a pattern, the Court cannot infer causation from that particular charge because it predates Trotman's protected activity—i.e., the lawsuits against Smith—which occurred in 2017.

Because Smith cannot establish a causal link between the exercise of his constitutional rights and the adverse action taken against him, he has failed to allege a plausible First Amendment retaliation claim.[7]

---

[7] The Court recognizes that "[a]lthough timing and ongoing antagonism have often been the basis for the causal link," Third Circuit precedent allows "a plaintiff to substantiate a causal connection for purposes of the prima facie case through other types of circumstantial evidence that support the inference." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280–81 (3d Cir. 2000). But there is nothing in the Complaint or the exhibits attached thereto from which the Court could infer causation.

10

### B. Fifth Amendment

Liberally construed, Trotman also appears to be alleging that his due process rights were violated because of the BOP's imposed punishment of two weeks in disciplinary segregation, which cannot be restored or remedied through the administrative appeal process.

To establish a due process violation in the prison context, a plaintiff must show that he was deprived of a liberty interest protected by the Constitution or a statute. *Sandin v. Conner*, 515 U.S. 472, 479 n.4, 483–84 (1995). A prisoner's liberty interests are not violated, however, unless a condition "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Therefore, in determining whether a prisoner's due process rights have been violated, courts first consider whether there has been a denial of a liberty or property interest. *See Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989). If a prisoner makes such a showing, the next step for the courts is to evaluate "whether the procedures attendant upon that deprivation were constitutionally sufficient." *Id*.

Here, Trotman's due process claim fails at the first step of the inquiry. Trotman alleges that he was confined in disciplinary segregation for two weeks. However, two weeks in disciplinary custody, without more, is insufficient to establish the kind of atypical deprivation of prison life necessary to implicate a protected liberty interest. *See Smith v. Mensinger*, 293 F.3d 641, 652 (3d Cir. 2002) (seven months in disciplinary custody insufficient to trigger a due process violation); *Griffin v. Vaughn*, 112 F.3d 703, 706–708 (3d Cir. 1997) (fifteen-month placement in administrative custody did not implicate a protected liberty interest because said confinement was not atypical); *Young v. Beard*, 227 Fed. Appx. 138 (3d Cir. 2007) (aggregate 980 days in disciplinary segregation did not violate the due process clause).

Accordingly, Trotman's Fifth Amendment due process claim is untenable.[8]

### C. Eighth Amendment

It is well established that "[t]he Eighth Amendment, through its prohibition on cruel and unusual punishment, prohibits the imposition of 'unnecessary and wanton infliction of pain contrary to contemporary standards of decency.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)). "The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial risk of serious damage to his future health." *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009) (quoting *Farmer v. Brennan*, 511 U.S. 825, 843 (1994)).

Trotman has not alleged any facts regarding the conditions under which he is incarcerated, nor does he claim that he has been deprived of "the minimal civilized measures of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Accordingly, his Eighth Amendment claim necessarily fails.[9]

### D. Leave to Amend

When dismissing a civil rights case for failure to state a claim, a court must give the plaintiff the opportunity to amend a deficient complaint unless doing so would be inequitable or futile. *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000) (citation omitted).

---

[8] To the extent that Trotman claims that his equal protection rights were violated, he has not alleged any facts suggesting that he was treated differently from similarly situated inmates—as is required to sustain such a claim. *See Wilson v. Schillinger*, 761 F.2d 921, 930 (3d Cir. 1985).

[9] Because Trotman has failed to allege any violations of his constitutional rights, the Court need not, and does not, reach Smith's alternative argument regarding the availability of a *Bivens* remedy.

Here, allowing Trotman to file another complaint would be futile. With respect to his First Amendment claim, Trotman cannot plausibly allege a causal link between his protected activity and the adverse action because of the passage of time. *See Curley*, 816 Fed. Appx. at 675 ("Absent factual allegations that could support a finding of causation, a significant period of time between the alleged protected conduct and retaliatory acts is fatal to the retaliation claim."). Similarly, Trotman's Fifth Amendment claim, which relates to his disciplinary segregation in a prison, is insufficient to implicate a protected liberty interest and cannot be cured. Finally, having reviewed the exhibits to the Complaint, there is no factual basis for any Eighth Amendment violation.

## V. Conclusion

Based on the foregoing, Smith's motion to dismiss will be granted. An appropriate order will follow.

Dated: July 16, 2021

<u>_____</u>
RICHARD A. LANZILLO
United States Magistrate Judge